IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LESTER MYER,                                                  CV. 05-1404-PK
                        Plaintiff,

v.                                                           FINDINGS AND
                                                            RECOMMENDATION

JOANNE B. BARNHART,
Commissioner of Social Security,
                        Defendant.
_____

PAPAK, Magistrate Judge:

## INTRODUCTION

Plaintiff Lester Myer ("Myer") brings this action for judicial review of a final decision of

the Commissioner of the Social Security Administration ("Commissioner") denying his

application for Social Security disability insurance benefits ("DIB") under Title II of the Social

Security Act.  This court has jurisdiction under 42 U.S.C. § 405(g).  For the reasons set forth

below, this court recommends that the Commissioner's final decision be affirmed.

## BACKGROUND

Myer was 52 years old on the date of the hearing.  He completed high school.  He worked

in the past as a jet engine mechanic for the Department of the Air Force, as a forklift driver and grinder for a paper company, a cable installer for a television company, an oil field pump operator, a truck driver for an office supply company, installing insulation, and framing and building houses.  AR 127, 166, 554-58.[1]

Myer alleges disability due to back and leg problems, and seizures.  AR 70.  Myer alleges that he has had knee operations, and that his right knee hurts if he walks, stands, or squats for too long.  AR 129.  He alleges ongoing pain in his knee.  AR 129.  He alleges that he ruptured two disks in his back in the early 1980s.  AR 127.  With regard to his back, Myer alleges that he has pain when he tries to pick up objects that are even a little heavy, that he must use two hands when lifting, that sudden jolts or bumps hurt his back, and that bending over hurts his back.  AR 127-29.

Myer alleges that he cannot work because he cannot stand or walk for very long, cannot pick up anything too heavy, and his seizures can recur at any time.  AR 70.  He also alleges that he stopped working because his back and legs bother him and his seizures come and go.  AR 70.

Myer filed an application for disability benefits that was denied in June 1996.  While he did not appeal that denial, he alleges the ALJ who presided over his current claim erred in failing to reopen his prior claim for benefits.

Myer filed an application for DIB benefits on October 9, 2002.  He initially alleged disability beginning in 1981.  AR 70.  Myer amended that date to June 30, 1996, at his hearing.  He was last insured on June 30, 1996.  Thus, to establish entitlement to benefits, he must

---

[1]Citations are to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

demonstrate that the onset of disability occurred on or before that date.  Myer's application was denied initially and upon reconsideration.  On May 12, 2004, a hearing was held before an Administrative Law Judge ("ALJ").  In a decision dated July, 2004, the ALJ found Myer not disabled and therefore not entitled to benefits.  On July 6, 2005, the Appeals Council denied Myer's request for review, making the ALJ's decision the final decision of the Commissioner.  Myer timely filed his complaint with this court on September 8, 2005.

## STANDARDS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F.3d at 1039 (citation omitted).  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, if "the evidence is susceptible to

Page 3 - FINDINGS AND RECOMMENDATION

more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

MEDICAL RECORDS

The medical records accurately set forth Myer's medical history as it relates to his claim. The court has carefully reviewed the records, and the parties are familiar with them. Accordingly, only a brief summary appears below.

Myer has a history of right knee problems dating back to 1973 or 1974, including surgeries (minescectomies) in the early 1970s and in 1979. AR 466-67. He continued to report chronic pain in the knee at various times over the years. Myer has a history of back pain that dates back to 1987. He was diagnosed with a moderate-sized central disk herniation L4-5. AR 159.[2] In 2003, Myer was diagnosed with post-traumatic stress disorder dating back to childhood and depression. AR 287. In 1974, Myer blacked out, was evaluated by Air Force doctors, and was honorably discharged from the Air Force based on an evaluation that described him as having a "[p]assive aggressive personality, severe, with antisocial component." AR 144. Myer experienced jerking episodes of unclear origin. Myer has been placed on prescription drugs including Amitriptyline, Sulindac, Vicodin, Percodan, and Indocin. AR 132. Myer reports that medication gives him inconsistent relief from his ongoing physical and mental conditions, and that at certain points he used marijuana on a daily basis for pain relief. AR 195, 351.

DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary

---

[2]In 2004, Myer was treated for chronic pain syndrome due to neck pain, lower back pain, T-spine pain, mild rotatory scoliosis of the spine, bilateral elbow pain, chronic headaches, and non-epileptic seizures. AR 453.

Page 4 - FINDINGS AND RECOMMENDATION

of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999):

Step One.  The ALJ determines whether claimant is engaged in substantial gainful activity.  If so, claimant is not disabled.  If claimant is not engaged in substantial gainful activity, the ALJ proceeds to evaluate claimant's case under step two.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two.  The ALJ determines whether claimant has one or more severe impairments significantly limiting him from performing basic work activities.  If not, the claimant is not disabled.  If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three.  The ALJ next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations found at 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, claimant is disabled.  If claimant's impairment does not meet or equal one listed in the regulations, the ALJ's evaluation of claimant's case proceeds under step four.  20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four.  The ALJ determines whether claimant has sufficient residual functional capacity ("RFC") despite the impairment or various impairments to perform work he or she has done in the past.  If so, claimant is not disabled.  If claimant demonstrates he or she cannot do work performed in the past, the ALJ's evaluation of claimant's case proceeds under step five.  20 C.F.R. §§ 404.1520(e), 416.920(e).

Step Five.  The ALJ determines whether claimant is able to do any other work.  If not, claimant is disabled.  If the ALJ finds claimant is able to do other work, the ALJ must show a

significant number of jobs exist in the national economy that claimant can do.  The ALJ may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the ALJ demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled.  If the ALJ does not meet this burden, claimant is disabled.  20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At step five, the burden shifts to the ALJ to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

THE ALJ'S FINDINGS

At step one, the ALJ found that Myer  had not engaged in substantial gainful activity at any time relevant to this decision.  AR 16.  This finding is not in dispute.  At step two, the ALJ found that Myer had no severe impairments prior to his alleged onset date and date last insured, June 30, 1996, for DIB.  AR 17.  The ALJ made no findings at steps three, four and five.

DISCUSSION

Myer contends that the ALJ erred by:  1) failing to reopen Myer's prior claim for disability benefits; 2) failing to consult with a medical expert to establish an onset date for Myer's mental impairments prior to his date last insured; 3) failing to find Myer had severe impairments at step 2; 4) failing to credit treating psychiatrist, Susan Smith, M.D.; 5) finding Myer not credible; 6) failing to credit the testimony of Myer's wife.

I.      Myer's Prior Disability Claim

Myer argues that the ALJ erred in failing to reopen his prior claim for disability benefits,

denied in June 1996.  As the ALJ correctly notes, Myer's present application was filed six years

after his previous claim.  The ALJ found that there was no reason under the Social Security

Regulations to reopen Myer's previous application.

Judicial review of the Commissioner's decisions are limited to final decisions made after

a hearing.  42 U.S.C. § 405(g).  The decision to reopen a prior benefits decision is discretionary

and not a final decision and, therefore, is not subject to judicial review.  See Califano v. Sanders,

430 U.S. 99, 107-09 (1977).  In Califano, the Court recognized an exception to this rule where

the denial of a petition to reopen a prior benefits decision is challenged on constitutional

grounds.  Id. at 109.  Thus, Myer must present a "colorable constitutional claim of [a] due

process violation that implicates a due process right" for this court to have jurisdiction to review

a decision not to reopen a prior benefits decision.  Rolen v. Barnhart, 273 F.3d 1189, 1191 (9th

Cir. 2001), cert. denied, 537 U.S. 818 (2002) (citation omitted).  A claim is "colorable" if it is not

"wholly insubstantial, immaterial or frivolous."  Id.

Myer alleges that his mental impairment is sufficient to assert a colorable constitutional

claim.  This court agrees and, therefore, has jurisdiction to review the Commissioner's refusal to

reopen Myer's previous application.

SSR 91-5p is an interpretive ruling that clarifies circumstances under which a claimant

who missed a deadline for requesting review of a final decision may provide evidence that

mental incapacity prevented him from understanding the review process.[3]  Myer contends that

the ALJ failed to consider SSR 91-5p.  Under this regulation, Myer would have to prove that his

_____

[3]Social Security Ruling 91-5p:  "Titles II and XVI:  Mental Incapacity and Good Cause
for Missing the Deadline to Request Review", available at 1991 WL 208067.

mental incapacity prevented the making of a timely request for review of an adverse

determination by the Commissioner, and that he had no legal representation at the time.  SSR 91-

5p, at *2.  Myer does not present any evidence as to his mental incapacity, lack of representation,

or inability to understand the review process.  Nor has Myer shown that his circumstances satisfy

any of the regulatory requirements for reopening an application.  See 20 C.F.R. § 404.988(c).[4]

Thus the ALJ correctly decided not to reopen his prior application for benefits.

II.      Myer's Onset Date for Mental Impairments

        Myer argues that the ALJ improperly disallowed the inference of an earlier onset date

than June 30, 1996, for Myer's mental impairment, and that the ALJ should have consulted with

a medical expert before choosing an onset date.

        Under Title II of the Social Security Act, a claimant must establish that his current

disability began on or prior to the date last insured to qualify for DIB.  See Tidwell v. Apfel, 161

F.3d 599, 601 (9th Cir. 1998).  Myer's date last insured was June 30, 1996.  To qualify for

benefits, Myer would have to prove that he became unable to work prior to June 30, 2006.  See

20 C.F.R. § 404.1509.  Because he applied for benefits on October 9, 2002, after his date last

insured, Myer also "must show that the current disability has existed continuously since some

time on or before [his] insured status lapsed."  Flaten v. Secretary of Health and Human Svcs.,

44 F.3d 1453, 1458 (9th Cir. 1995).

_____

        [4]Myer's reliance on Evans v. Chater, 110 F.3d 1480 (9th Cir. 1997), for the argument that
Myer's mental impairment implicates a due process claim is unavailing.  The Evans court
explained that a claimant must offer evidence establishing mental incompetence sufficient to
support his claim that the denial to reopen was a due process violation.  Id. at 1483; see also Udd
v. Massinari, 245 F.3d 1096, 1099 (9th Cir. 2001) (claimant lacked the mental capacity to
understand the cessation of his disability benefits and take steps to pursue an appeal such that
termination of benefits was a denial of due process).  Myer provides no evidence of mental
incompetence here.

When he filed his application for benefits in October 2002, Myer alleged an onset date of December 31, 1981, the year he alleges his disabilities made him unable to work. AR 70, 533. At his hearing on May 12, 2004, Myer changed his onset date from December 31, 1981, to June 30, 1996, nearly fifteen year later. AR 533. While the ALJ has a duty to assist in developing the record to determine onset date, <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991), Myer's decision at the hearing to change his onset date by nearly fifteen years placed the ALJ in the position of reviewing the record and medical evidence to determine whether Myer was disabled and unable to work as of June 30, 1996. Because the record evidence did not support a finding of disability, the ALJ found Myer not disabled as of June 30, 1996. The court finds no error in the ALJ's use of Myer's chosen onset date in evaluating Myer's claim for benefits.

Myer contends that the ALJ erred in failing to consult a medical expert to establish an inferred onset date of Myer's alleged mental impairments prior to June 30, 1996, and argues that the ALJ ignored SSR 83-20. 1983 WL 31249. "The onset date of disability is the first day an individual is disabled as defined in the Act and regulations." <u>Id.</u>, at *1. However, an ALJ need only call on a medical expert when the onset date must be inferred because that date cannot be established by medical evidence. Here, there was sufficient evidence in the record to determine that the onset date was not prior to 1996 such that an inference of onset was unnecessary. The ALJ correctly relied on the medical evidence and Myer's work history to find that he was not disabled on June 30, 1996 or at anytime prior to the date last insured.[5] The cases cited by Myer

_____

[5]Myer's reliance on his separation from the Air Force in 1975 for a "personality disorder" is not persuasive in establishing disability. The record shows that Myer went on to work for at least five years following his discharge, showing that any impairment present at his discharge was not so severe as to preclude gainful employment. AR 23. Also, he did not receive any mental health diagnosis or treatment between 1975 and 2002, making Myer's argument that the ALJ should have found a progressive mental impairment equally unpersuasive.

Page 9 - FINDINGS AND RECOMMENDATION

are unconvincing on the issue of, whether, in the present case, the ALJ was required to infer a prior onset date.  See Armstrong v. Comm'r of the Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998) (record showed that claimant suffered from multiple impairments prior to date last insured but date those impairments became disabling was unclear); Morgan v. Sullivan, 945 F.2d 1079, 1081-82 (9th Cir. 1991) (record showed unambiguous evidence of mental impairment in January 1980 but date of last insured was December 1979 making date of onset unclear).   Because Myer failed to meet his burden of providing medical evidence to establish a disabling mental impairment prior to the expiration of his entitlement to DIB on June 30, 1996, the ALJ's finding as to onset date should be affirmed.

III.    ALJ's Finding at Step Two

Myer contends that the ALJ erred in finding Myer had no severe impairments at step two in the sequential evaluation process.  The Commissioner argues that Myer failed to establish by medical evidence that his alleged mental or physical impairments were severe.

An impairment is severe for purposes of step two of the evaluation process if it significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  "Basic work activities" are the abilities and aptitudes necessary to do most jobs.  20 C.F.R. § 404.1521(b).  These include physical functions such as seeing, hearing, speaking, walking, standing and sitting, and mental functions such as understanding, remembering, using judgment and responding appropriately to work situations.  Id.  At step two, the ALJ may find a claimant's impairment "not severe" and determine that the claimant is not disabled when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on a claimant's ability to work.  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

The burden of proving a medically determinable severe impairment is on the claimant. 20 C.F.R. §§ 404.1512, 416.912; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153-54 (1987).  To satisfy step two's requirement of a severe impairment, the claimant must prove the physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. § 404.1508, 416.908.  The claimant's statement of symptoms alone will not suffice to establish a medically determinable impairment.  <u>Id.</u>  The alleged impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques and not only by the claimant's statements regarding his symptoms.  <u>See</u> 42 U.S.C. 423(d)(3); 20 C.F.R. § 404.1508. "Regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e. medical signs and laboratory findings."  <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1005 (9th Cir. 2005) (citation omitted).

Myer argues that the ALJ erred in his step two finding by failing to properly consider the evidence offered by Myer himself, Myer's wife, and the opinion of treating psychiatrist Susan Smith, M.D.  Because the ALJ properly discounted the opinions of Myer and Dr. Smith, and found nothing probative in Mrs. Myer's testimony, there is no basis in the record for concluding Myer suffered from physical or mental impairments that were "severe" on or before June 30, 1996.

A.    <u>Myer's Testimony</u>

Myer contends that the ALJ erred by rejecting his testimony without providing clear and

Page 11 - FINDINGS AND RECOMMENDATION

convincing reasons for doing so.  The Commissioner argues that the ALJ relied on evidence in the record in making his credibility determination.

"Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Id.  In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  Smolen, 80 F.3d at 1284 (citations omitted).  The ALJ may also consider unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.  Rollins v. Massinari, 261 F.3d 853, 856-57 (9th Cir. 2001).  An ALJ is not required to believe every allegation made by a claimant or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. 423(d)(5)(A).  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

Myer first argues that the ALJ wrongly discredited Myer's testimony as insufficient to support a finding of severity at any point between June 30, 1996 and the date of the hearing, and rejected the progressive nature of his impairments.  AR 21.  This court notes that the ALJ reviewed the medical evidence of record with extreme detail and was unable to find sufficient evidence to substantiate Myer's allegations of severe impairment.  Specifically the ALJ noted that Myer provided no medical documentation on his physical condition between May 5, 1988, and March 8, 2002 (AR 17); Myer had a totally normal back exam on April 16, 2002 (AR 18,

Page 12 - FINDINGS AND RECOMMENDATION

200); Myer was non-compliant with physical therapy prescribed for his herniated disc impairment in November 1987, April 1988, and Spring 2002 (AR 17, 18; 164-65, 188-90); a physical exam from July 2002 found Myer healthy appearing, with no evidence of pain, excellent muscle, no evidence of joint or muscle failure and that he was active and strong (AR 18, 198-200); Myer did not pursue or follow treatment for his herniated disc impairment that existed since 1985 (AR 18); there was no diagnosis of or treatment for mental impairments until 2002 (AR 20); a normal EEG and CT scan in March 2002 confirmed his seizures were non-epileptic (AR 19, 271-72); and an MRI in 2002 noted no significant abnormalities and stated no treatment was indicated for his non-epileptic/pseudo seizures (AR 20, 185).  The ALJ found that Myer's subjective complaints of back and neck pain and seizures were inconsistent with the medical evidence.  When a claimant's statements "are not substantiated by the objective medical evidence, " the ALJ must "make a finding on the credibility of the individual's statements" based on all the evidence in the record.  SSR 96-7p, 1996 WL 374186, at *3.  Thus the ALJ properly discredited Myer's complaints on the issues which form the basis of his disability claim. Because the ALJ relied on significant evidence in the record to find that Myer was not under a severe impairment for the period in question and that his impairments were not progressive in nature, the ALJ committed no error.

Myer further argues that the ALJ wrongly found Myer an inconsistent historian. According to treating physicians, Myer was an inconsistent historian.  See, e.g., Dr. Antezana: "He is a confusing historian" (AR 180); Dr. Johnson: "[H]e was a cagey and reluctant historian" (AR 184).  The ALJ's finding that Myer was an inconsistent historian is supported by the record.

Myer argues that the ALJ wrongly discredited Myer because of the uncertain etiology of his jerking episodes or seizures.  Myer alleged that these episodes had plagued him for years and

Page 13 - FINDINGS AND RECOMMENDATION

prevented him from working.  As noted above, the diagnostic medical evidence did not support Myer's allegation as to the severity of his seizures, and more than one doctor ruled out epilepsy and myclonic seizures.  Further, Myer has no medical workup for the seizures prior to 2002, no treatment, and no medication prescribed to control his alleged symptoms.  After an EEG, Dr. William Hoffman diagnosed his seizures as "non-epileptic events whose occurrence was shaped and reinforced by external rewards such as family interactions and (perhaps expected) behavior [by Myer]."  AR 204.  After an MRI in November 2002, Dr. Joshua Johnson labeled the jerking episodes "non-epileptic/pseudo seizures", recommended no treatment, and cautioned that treatment and further evaluation would only be recommended if Myer developed objective neurologic signs or had his spells witnessed by a reliable historian.  AR 185.  Because the ALJ relied on significant medical evidence in the record to find that Myer's jerking episodes were not as limiting as Myer alleged, the ALJ's credibility assessment on this point should be affirmed.

Myer argues that the ALJ wrongly discredited Myer for smoking marijuana and lifting weights.  A claimant's activities bear on his credibility if the activities in question were inconsistent with his alleged limitations.  Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 599-600 (9th Cir. 1999).  Myer alleged ongoing pain in his back and neck, but reported lifting weights to Dr. Karen Rasmussen in April and July 2002.  AR 190, 200.  The ALJ may consider such inconsistencies in making his credibility finding.  See Rollins, 261 F.3d at 856-57.  In the treatment of his seizures, Myer was advised by physicians to stop drinking and smoking marijuana.  His failure to comply with this directive is also probative.

Myer argues that the ALJ wrongly discredited Myer based on the ALJ's assessment that Myer exaggerated his complaints for secondary gain.  Consideration of exaggeration for secondary gain is an appropriate  credibility consideration.  Tidwell, 161 F.3d at 602; Matney v.

Page 14 - FINDINGS AND RECOMMENDATION

<u>Sullivan</u>, 981 F.2d 1016, 1020 (9th Cir. 1992).  Myer's motivation for secondary gain during examinations based on his seizures was noted by Dr. Johnson twice in 2002.  AR 178, 185.  The ALJ committed no error in considering Dr. Johnson's statements in determining Myer's credibility.

Because the ALJ relied on proper standards of credibility assessment and evidence in the record in making his determinations regarding Myer's testimony as to his subjective symptoms, this court recommends that the ALJ's finding that Myer was not credible be affirmed.

B.    <u>Dr. Smith's Testimony</u>

Beginning in July 2003, Susan Smith, M.D., was Myer's treating psychiatrist.  AR 287. The ALJ considered and discredited the opinions of Dr. Smith, specifically referring to two letters written by Dr. Smith on February 4, 2004, and May 25, 2004.  Myer contends that the ALJ improperly rejected Dr. Smith's opinions.

The ALJ is responsible for resolving conflicts and ambiguities in the medical testimony. <u>See</u> <u>Magallenes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).  In evaluating the medical evidence, the ALJ is not required to find a physician's opinion conclusive as to a physical condition or as to the ultimate issue of disability.  <u>See</u> <u>Morgan</u>, 169 F.3d at 600.  In particular, the ALJ is not bound to a physician's opinion of a claimant's disability or claimant's employability, because these issues are reserved to the Commissioner.  20 C.F.R. § 404.1527(e). As the court explained in <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180 (9th Cir.), <u>cert. denied</u>, 531 U.S. 1038 (2000), a physician's opinion of disability is not a legal opinion establishing disability under the Social Security Act because the Commissioner's finding involves a medical and vocational component.

In the Ninth Circuit, "where [a] treating doctor's opinion is not contradicted by another

Page 15 - FINDINGS AND RECOMMENDATION

doctor, it may be rejected only for 'clear and convincing' reasons." Lester, 81 F.3d at 830, quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If a treating physician's medical opinion is contradicted by another physician, the Commissioner may reject the opinion by providing "specific and legitimate reasons" supported by substantial evidence in the record. Morgan, 169 F.3d at 600-601.

Dr. Smith assessed Myer with post-traumatic stress disorder (PTSD) dating back to childhood trauma and depression. AR 287-88. She opined that his symptoms have worsened over the past 5-10 years due to worsening health and secondary worsening of pyschosocial factors including job loss, financial pressures, and family stressors. Id. She concluded that due to his physical health issues, he was no longer able to do hard physical labor jobs that he had done in the past. Id. She also concluded that as a result of his pain issues, his PTSD and his depression, Myer was not appropriate for retraining to a more sedentary job. Id. Finally she wrote that Myer was totally disabled from working at a full time competitive job. Id.

The ALJ found that Dr. Smith's opinion was entitled to little weight because it relied on Myer's non-credible statements, as discussed above. A physician's opinion that is premised solely on a claimant's subjective complaints is properly given the same weight as claimant's own credibility. See Batson v. Commissioner of Social Security, 359 F.3d 1190, 1195 (9th Cir. 2004). A psychological opinion that is not supported by clinical evidence and is based on claimant's subjective complaints and the statements of family and friends is properly rejected. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, Dr. Smith's assessment of Myer's PTSD as dating back to his childhood relies upon Myer's description of physical abuse as a child and on his subjective symptoms including nightmares, irritability, decreased concentration, and intrusive thoughts of past trauma. AR 287. The ALJ properly considered and rejected the portions of Dr.

Page 16 - FINDINGS AND RECOMMENDATION

Smith's opinions that relied on Myer's subjective statements.

Myer contends that the ALJ wrongly rejected Dr. Smith's opinion that Myer's medical and psychiatric conditions dated back to the 1970s and 1980s.  The ALJ rejected this conclusion based on its inconsistency with the medical evidence of record that did not show Myer had mental impairments that were medically determinable severe since June 30, 1996.  A medical opinion that is inconsistent with the rest of the evidence of record is properly rejected.  Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999).  Dr. Smith relied on Myer's subjective statements as to his impairments, and had no objective reasoning to support her conclusion that strings together isolated events such as Myer's discharge from the Air Force in 1975, and his psychological condition in 2004, nearly 30 years later.  Myer did not receive psychological care until 2002.[6]  No clinical findings support Dr. Smith's assessment of Myer's disability in 2004, and no medical evidence in the record supports her conclusion as to the longevity of Myer's psychiatric conditions.  The ALJ properly rejected Dr. Smith's opinion as to the onset of Myer's mental impairments.

C.    Mrs. Myer's Testimony

Myer contends that the ALJ impermissibly rejected the testimony of Tong Bai Myer ("Mrs. Myer"), the claimant's wife.  Mrs. Myer testified at the hearing that Myer would anger easily, yell at people on the freeway or on the street when he was driving, yell at his children, and that he had seizures while he was driving.  AR 549-552.  In her written statement, she

---

[6]Myer's argument that the record is "replete" with evidence of mental problems is not substantiated.  Myer's few instances of problematic social functioning prior to 1996 do not rise to the level of impairment for Personality Disorders under § 12.08.

Page 17 - FINDINGS AND RECOMMENDATION

checked boxes indicating that Myer had trouble relating to store clerks, neighbors and medical professionals, and that he had back problems.  AR 97, 104.

The ALJ wrote that he considered Mrs. Myer's testimony, but that "the references to symptoms or physical and/or mental problems stated by the claimant and his wife have not proven significant limitations were present since his alleged onset date and date last insured through the present."  AR 21.  The ALJ also wrote that "[t]he claimant and his wife acknowledge he is much worse now [than in 2002].  However, I need not address whether his impairments are severe now" as he was entitled to benefits based on insurance up until June 30, 1996, and he had not met his burden of proving his impairments were medically determinable severe at that time. AR 21-22.

Myer correctly contends that, while the ALJ noted Mrs. Myer's testimony in his written decision, he neither expressly credited, nor discredited it.  Tr. 21-22.  Case law clearly establishes that the ALJ must account for lay witness testimony and provide germane reasons for rejecting it.  See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  However, the ALJ is not required to discuss non-probative evidence.  See Vincent ex. rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  In this case, the ALJ did not reject Mrs. Myer's testimony, but found it to be non-probative of disability since the alleged onset date.  Thus, he did not err by failing to provide germane reasons for rejecting it.

Because the ALJ properly evaluated the medical evidence and testimony in the record and supported his findings with clear and convincing reasons, this court recommends affirming the ALJ's step two finding that Myer did not have a severe physical or mental impairment as of June 30, 1996.

Page 18 - FINDINGS AND RECOMMENDATION

CONCLUSION

For the foregoing reasons, the Commissioner's determination that Myer does not suffer from a disability and is not entitled to DIB benefits under the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision should be affirmed and a judgment should be prepared dismissing this case with prejudice.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due December 15, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 30th day of November, 2006.


  /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge